AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original    ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

**LODGED**
CLERK, U.S. DISTRICT COURT
04/19/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: _____DVE_____ DEPUTY

**FILED**
CLERK, U.S. DISTRICT COURT
04/19/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: _____KH_____ DEPUTY

UNITED STATES OF AMERICA,

        Plaintiff,

v.

LAWRENCE EUGENE QUAST,

        Defendant.

Case No.  8:21-mj-00271-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, hereby state that the following is true to the best of my knowledge and belief. On or about the date of __October 28, 2020__ in the county of __Orange__ in the Central District of California, the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession of Fentanyl and Methamphetamine with Intent to Distribute |

This criminal complaint is based on these facts:

☒ Continued on the attached affidavit.

                                      /s/
                              *Complainant's Signature*

                  Mark Lensing, DEA Task Force Officer
                              *Printed Name and Title*

Attested to by the applicant via telephone in accordance with the requirements of Fed. R. Crim. P. 4.1.

Date:  April 19, 2021    /s/ Autumn D. Spaeth
                                              *Judge's Signature*

City and State:  Santa Ana, California    Autumn D. Spaeth, U.S. Magistrate Judge
                                                                      *Printed Name and Title*

AUSA:  Robert J. Keenan  //  (714) 338-3597

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Mark Lensing, being duly sworn, hereby declare and state as follows:

**INTRODUCTION**

1. I am a Task Force Officer ("TFO") with the United States Department of Justice, Drug Enforcement Administration ("DEA"), and have been so employed since July 2020. I am currently assigned to the Los Angeles Field Division ("LAFD"), Orange County District Office ("OCDO"), Task Force Group One ("TFG-1"). As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), and thus empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. Prior to being assigned as a TFO with the DEA, I worked as a detective and am a full-time sworn law enforcement officer with the Orange Police Department. I have been a sworn law enforcement officer since September 2002. I am a Police Officer within the meaning of Section 830.1 of the California Penal Code.

2. I have received training and have experience investigating violations of state and federal narcotics and money laundering laws, including, but not limited to, Title 21, United States Code, Sections 841, 846, 952, 959, and 963 and Title 18, United States Code, Section 1956(a). I have been involved in various electronic surveillance methods and in the debriefing of informants and witnesses, as well as others who have knowledge of the manufacturing, distribution,

transportation, storage, and importation of controlled substances and the laundering of drug proceeds.

3. I have participated in many aspects of drug investigations, including investigations into the smuggling of illegal drugs, money laundering, and extortion related to drug trafficking. I am familiar with narcotics traffickers' methods of operation, including the manufacturing, storage, transportation, and distribution of narcotics, the collection of money that represents the proceeds of narcotics trafficking, and money laundering. I am also familiar with the manner in which narcotics traffickers transport and distribute narcotics in areas they control. I am familiar with how drug traffickers utilize counter-surveillance techniques to avoid detection by law enforcement.

## PURPOSE OF AFFIDAVIT

4. This affidavit is made in support of a criminal complaint and arrest warrant against **LAWRENCE EUGENE QUAST** ("QUAST") for Possession of Fentanyl and Methamphetamine with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1).

5. As noted below, the facts set forth in this affidavit are based upon information obtained from other law enforcement personnel, reports and database queries, and, where noted, my personal knowledge and training and experience.

6. This affidavit is intended to show merely that there is probable cause for the requested complaint and arrest warrant, and I have not, therefore, attempted to set forth each and every fact that may be known to me and other law enforcement

personnel concerning this investigation.  Moreover, unless otherwise noted, all conversations and statements described in this affidavit are related in substance and in part only.

## PROBABLE CAUSE

7.   I have reviewed a crime report prepared by District Attorney Investigator Rob Long of the Orange County District Attorney's Office AB109 Crime Impact Task Force ("AB109 Task Force"), Santa Ana Police Department Case Number 2020-22708, regarding an incident involving QUAST that occurred at the Ayres Hotel, 325 Bristol Street, Room #219, Costa Mesa, California, on October 28, 2020.  I also have reviewed reports regarding the incident from AB109 Task Force Investigators Reyes, Burciaga, Brown, Smith, and Ayala.

**A.    Report of Suspected Probation Violation by QUAST**

8.    The AB109 Task Force is a plainclothes undercover unit primarily tasked with locating wanted subjects on Post-Release Community Supervision ("PRCS") and Mandatory Supervision ("MS").

9.    On October 21, 2020, the AB109 Task Force received information from Deputy Probation Officer ("DPO") Rodriguez that QUAST was in possession of narcotics for sales and was in possession of a handgun.  DPO Rodriguez received the information through the probation department.  QUAST is on PRCS and subject to search pursuant to his terms of probation.  QUAST is listed as a transient and stays at hotels in Costa Mesa, California.

**B.    October 28, 2020: Surveillance of QUAST**

10.   On October 27, 2020, Inv. Long asked QUAST's assigned probation officer, DPO Pacheco, to schedule a meeting with QUAST

3

at the Santa Ana Police Department ("SAPD") to conduct a compliance check. DPO Pacheco contacted QUAST and scheduled the compliance check-in for the following day.

11.   On October 28, 2020, at approximately 11:30 a.m., QUAST met with DPO Pacheco at the SAPD. QUAST was positively identified by DPO Pacheco while at SAPD.

12.   Task Force officers observed QUAST walk away from SAPD, eastbound on Civic Center Drive to the corner of Civic Center Drive and Flower Street, at which point he walked southbound on Flower. At approximately 12:00 p.m., investigators observed a 2000 silver Lexus SUV, bearing license plate number 4MWX597 and registered to a third-party (initials T.C.), pull along the curb near QUAST, and QUAST then got into the front, right passenger-seat of the SUV. A female, later identified as Shyanne Yvonne Cooper ("COOPER"), was driving the SUV.

13.   Task Force officers followed the Lexus SUV as it drove southbound on Bristol Street. Investigators observed the Lexus pull into the parking lot of a Taco Bell at the corner of Bristol and Segerstrom Avenue. COOPER got out of the vehicle, and QUAST was seen talking with the driver of another vehicle that had been following the Lexus. The driver of the other vehicle (T.C.) was determined to be the registered owner of the Lexus. After approximately 15 minutes, QUAST was observed getting into the driver's seat of the Lexus, and COOPER go into the passenger seat.

14. QUAST then drove the Lexus to the Ayres Hotel located at 325 Bristol Street, Costa Mesa, California. The driver of the other vehicle followed them to the hotel. The Lexus arrived at the hotel at approximately 1:00 p.m. (1300 hours). Upon their arrival at the hotel, QUAST and COOPER were seen removing bags from the Lexus. QUAST and COOPER were then observed, along with T.C. (the driver of the other vehicle), entering a pedestrian door near the northwest corner of the hotel.

15. Inv. Reyes contacted hotel management and was able to confirm that QUAST was registered to Room #219. He also learned that QUAST used his credit card to pay for another room, #148.

16. A short time later, Inv. Reyes observed COOPER exit the hotel and meet with an unknown male in the Lexus in the hotel parking lot. The unknown male exited the Lexus shortly thereafter. Based on their training and experience, investigators noted that the encounter was consistent with a narcotics transaction. At approximately 2:04 p.m. (1404 hours), QUAST exited the hotel and met with COOPER in the hotel parking lot.

C. **Task Force Officers Contact QUAST in Hotel Parking Lot to Conduct Compliance Check**

17. At approximately 2:15 p.m. (1415 hours) on the same day (October 28, 2020), for purposes of conducting a compliance check, Task Force officers contacted QUAST and COOPER while they were seated in the Lexus, still parked in the north-side parking lot of the Ayres Hotel. QUAST was placed in a Santa Ana police vehicle. COOPER was found in possession of suspected fentanyl

and suspected Xanax, as well as $875 in U.S. Currency. She was later arrested for violations of Sections 11351 and 11378 of the California Health & Safety Code.

18.  Inv. Long asked QUAST what room he was staying in at the hotel.  QUAST initially said he was not staying in a room.  Inv. Long told QUAST that the officers knew he was staying at the hotel and asked him again what room he was staying in.  QUAST then said he had rented Room #106 for his girlfriend's (COOPER's) friend.  QUAST then admitted he stayed in Room #219 last night, but said they had already checked out.

19.  At this point, Officer Smith advised Inv. Long two room keys for the Ayers Hotel were found in one of QUAST's pockets (reports vary as to whether it was his pants or jacket pocket), and Officer Smith handed the key cards to Inv. Long.  Inv. Long asked QUAST if he was staying in Room #219.  In response, QUAST began mumbling that there was Fentanyl and Methamphetamine in Room #251 and that "Russell" had it.  Inv. Long again asked QUAST to focus on Room #219, the room under his name.  QUAST then said there was Fentanyl in Room #219, but he was just holding it for "Russell."

D.  **Discovery of Fentanyl & Methamphetamine in QUAST's Hotel Room**

20.  Based on QUAST's PRCS probation status, Inv. Long and other Task Force officers went to Room #219 and conducted a probation search of the room.  Upon their arrival, the door to the room was positioned just against the door jam, but not

6

completely shut or latched.  Officers announced themselves and opened the door.  There were no occupants inside the room.

21.  Although the key cards found in QUAST's possession were not used to enter Room #219, Inv. Long later tested the key cards on the door to Room #219 and found that one of the key cards worked and unlocked the door to that room.

22.  Upon entering Room #219, officers located several bags and personal belongings along the west wall of the room.  In a black bag, which was found on top of a bench along the west wall, Inv. Long found a white envelope that contained a large amount of United States Currency, later determined to be $2,715.

23.  Inside the black bag, Inv. Long also found a small Vaultz metal cashbox.  The box had a combination-style lock on it.  Officers were able to open the box by using a combination code that QUAST provided.  Inside the metal box, Inv. Long found several small zip-lock baggies containing various substances that Inv. Long recognized as methamphetamine and fentanyl, as well as marijuana.  Officer also found several blue-colored pills that were identified as suspected Xanax.  The zip-lock baggies were later weighed and found to be 5.5 grams of methamphetamine and 3.9 grams of fentanyl.

24.  When the tray containing those baggies was removed from the metal box, Inv. Long found additional narcotics and drug-paraphernalia in the box's lower storage area.  Specifically, the officers found several medium-sized individually-packaged zip-lock baggies containing suspected methamphetamine and fentanyl.  One bag, weighing 32.5 grams,

contained a crystal substance believed to be methamphetamine. Five other zip-lock bags contained an off-white rock substance resembling fentanyl. The total weight of the five bags of suspected fentanyl was 179.4 grams. A small glass bottle of Alprazolam and four hypodermic syringes were also found in the box's lower storage area.

25. On the bench, officers also found a small working digital scale and two pieces of mail addressed to QUAST, along with a gray-colored shoulder bag. Inside the gray bag, officers found numerous empty small plastic baggies, many of which had an "8-ball" logo printed on them. Based on his training and experience, the seizing officer noted that such baggies are often used in the sale of narcotics.

E. **Hotel Employees Discover Additional Drug Evidence in Second Floor Hallway and Notify Police**

26. Later that afternoon, at approximately 4:35 p.m. (1635 hours), an employee at the Ayres Hotel called Task Force investigators regarding a large cardboard box that the employee found near an ice machine on the second floor of the hotel, located between Rooms #219 and #251. The box contained what the employee believed to be narcotics. SAPD Officers Smith and Gonzalez responded back to the hotel and took custody of the box.

27. Inside that box, officers found a large zip-lock bag containing a white crystal substance that appeared to be methamphetamine. They also found several smaller zip-lock baggies that had pressed pills resembling fentanyl, a powdery

substance resembling fentanyl, and a crystal substance resembling methamphetamine. In total, the substances in the box were weighed and found to contain a total of 296.6 grams of suspected methamphetamine and 20.1 grams of suspected fentanyl. The box also contained a dictionary with a hollowed-out middle, in which officers found a small digital scale.

28. On the outside of the box, officers found a handwritten note that said, "Call me Russell," together with a phone number.

29. On the evening of October 28, 2020, at approximately 10:12 p.m. (2012 hours), a hotel employee called Inv. Long to report that a person who identified himself as "Cody" came by the front desk to ask whether anyone had turned in a box that he left near the hotel's second floor ice-machine. "Cody" said the items in the box, which he said was just money, belonged to Russell. Cody also said he took the box out of Room #251 at Russell's request, and he left the box near the ice-machine as he was hurriedly leaving Room #251. He said drug activity was going on in that room, but he was not part of it.

F.   **Post-Arrest Interview of QUAST**

30. QUAST was arrested for possession of controlled substances for sale, in violation of Sections 11351 and 11378 of the California Health & Safety Code. While at the SAPD Jail, QUAST was interviewed by law enforcement officers. After being advised of his Miranda rights, QUAST said he understood them and agreed to speak with the officers. QUAST provided the following information:

9

      a.   QUAST met Shyanne COOPER a few days ago. Prior to being contacted by law enforcement in the parking lot of the Ayers Hotel, QUAST and COOPER were sitting in his vehicle (<u>i.e.</u>, the Lexus SUV referenced above), with him on the passenger side and her on the driver's side. COOPER was getting high in his vehicle.

      b.   QUAST was staying in Room #219 of the Ayres Hotel and checked in a couple of days ago. COPPER stayed with him one night. Earlier that day, in between 3:00 p.m. and 4:00 p.m., a male subject named RUSS COOPER came by QUAST's room and delivered to QUAST a black bag that contained a cash box. According to QUAST, RUSS asked QUAST to hold it for him.

      c.   When asked what else he thought we found in his room besides cash, QUAST said probably drugs in the cash box. QUAST said he did not look into the cash box, but there is usually meth and fentanyl in there (the cash box). QUAST admitted to knowing what he was holding for Russ. Even though he didn't look in the cash box, QAUST said he knew there was drugs in there.

      d.   When asked how much money was in the bag, QUAST said there was thousands, but he did not count it all. QUAST said the money was in an envelope, and the drugs were in the cash box. QUAST said he guessed there were about two or three pieces of fentanyl in the cash box, even though he didn't actually see it. QUAST further explained that a "piece" was 24 grams.

e. QUAST said that Russ was staying in room #251 at the Ayres Hotel. QUAST said that Russ sells the drugs and sometimes has QUAST hold the drugs for him. At to the cash box, QUAST admitted that he knew Russ would not bring him an empty cash box to hold onto. When asked whether he knew drugs were in the cash box, QUAST said, "Yeah." When asked if he was okay with drugs being in the cash box, QUAST said he was okay with it because Russ pays him for it and gives him drugs. QUAST said that he has used methamphetamine since 2002.

f. When asked about the drugs found at the hotel by the ice machine, QUAST said he did not do any business with anybody else there at the hotel. He also said he thought it was odd that someone would write Russ's name on the box. QUAST also noted that Russ was possibly doing more business there at the hotel.

g. When asked if he sold any drugs to anybody at any time while staying at the Ayers Hotel, QUAST admitted that he did. QUAST said that he sold a half ounce of methamphetamine that morning to a female named Ashley for $400. When asked if he had sold any fentanyl, he said he had not.

h. Finally, according to QUAST, Shyanne COOPER did not know about the money and drugs. Moreover, QUAST said that the above-referenced male subject T.C. is a friend who came over to the hotel just to see how he was doing, and he had nothing to do with anything.

11

G.  **Laboratory Analysis of Seized Drug Evidence**

31.  The suspected methamphetamine and fentanyl found on October 28, 2020 in QUAST's Room #219 at the Ayres Hotel (designated by DEA as **Exhibits 1** and **2**) and the drug evidence in the cardboard box that was found near the hotel's second floor ice-machine (designated by DEA as **Exhibits 3** and **4**) were submitted to the DEA's Southwest Laboratory for testing.

32.  In November 2020, the DEA laboratory issued reports regarding the results of its drug analysis of those exhibits. According to the lab, **Exhibit 1** contained a total net weight of 29.5 grams of methamphetamine, with a purity of approximately 98%, meaning it contained 28.9 grams of methamphetamine (actual).  **Exhibit 2** was found to contain a total net weight of 156.4 grams of fentanyl and 5.05 grams of Tramadol.

33.  As to the substances found in the box near the ice machine, **Exhibit 3** was found to have a total net weight of 284.3 grams of methamphetamine, with a purity of approximately 98%, meaning it contained 278.6 grams of methamphetamine (actual). **Exhibit 4** was found to contain trace amounts of fentanyl and methamphetamine, 6.93 grams of 4-ANPP (a precursor to fentanyl), and 12.33 grams of Alprazolam, which is also a controlled substance.

## CONCLUSION

34.  Based on the forgoing, I submit that there is probable cause to believe that LAWRENCE EUGENE QUAST has committed a

violation of 21 U.S.C. § 841(a)(1), namely, Possession of Fentanyl and Methamphetamine with Intent to Distribute.

Attested to by the applicant
via telephone in accordance
with the requirements of Fed.
R. Crim. P. 4.1 on this day,
April 19, 2021.


   /s/ Autumn D. Spaeth
       AUTUMN D. SPAETH
UNITED STATES MAGISTRATE JUDGE

13